**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**RYAN C. ROSE**                                                          **PLAINTIFF**

**VS.**                                       **CIVIL ACTION NO.** 3-23-cv-57-KHJ-MTP

**NISSAN NORTH AMERICA, INC.
and DOES 1-5**                                                           **DEFENDANTS**

---

**COMPLAINT**

---

**JURY TRIAL DEMANDED**

COMES NOW Ryan C. Rose and files this Complaint for civil damages against Defendants

Nissan North America, Inc. and Does 1-5, as follows:

**I. PARTIES**

1.      Plaintiff Ryan C. Rose ("Plaintiff" or "Rose") is an adult resident citizen of Rankin

County in the State of Mississippi.

2.      Defendant Nissan North America, Inc. ("Nissan") is a foreign corporation doing

business in the State of Mississippi at 300 Nissan Drive, Canton, Mississippi 39046, and may be

served with process through its registered agent: Corporation Service Company, 109 Executive

Drive, Suite 3, Madison, MS 39110.

3.      Defendants Does 1-5 are individuals and/or entities whose identities are currently

unknown that have committed a tort, in whole or in part, in the State of Mississippi and have

otherwise done and/or are doing business in the State of Mississippi.  Upon discovery of the

identities of Does 1-5, Rose will supplement his Complaint with their names in accordance with the Federal Rules of Civil Procedure.

## II. JURISDICTION AND VENUE

4.      The Parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00.   Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

5.      A substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. Therefore, venue is proper in the Northern Division pursuant to 28 U.S.C. § 1391.

## III. FACTS

6.      An arc flash is a phenomenon that occurs when a flashover of electric current leaves its intended path and travels through the air from one conductor to another or to ground.  The results of an arc flash are often violent and when a worker is in close proximity to the arc flash, serious injury or death can occur.

7.      On April 6, 2022, Rose was working at the Nissan Canton Plant to clean carbon on and around copper busbars that were involved in and/or were in close proximity to an arc flash incident that had occurred days earlier at the Plant.  A busbar is a thick metallic, e.g. copper, uninsulated strip or "bar" housed inside of cabinets for local high current electrical power distribution.

8.      To assess the damage, Rose and his co-workers had to trace the copper busbars through multiple cabinets.  The cabinets were approximately four feet by four feet (4'x4') and were lined up along a narrow hallway inside the Nissan Plant.  Rose and his co-workers had to enter each cabinet to trace, clean, and/or replace busbars that were damaged and/or coated with carbon.

9.      The busbars could be traced from cabinet to cabinet as they exited one cabinet wall and entered through the wall of an adjacent cabinet.  However, each cabinet had to be opened and inspected separately.

10.     Nissan de-energized all cabinets which Rose and his co-workers needed to access, including all cabinets down the line through which the damaged busbars traveled. If the cabinet was not de-energized and was not safe to enter, it was "hot marked" by Nissan.  For example, the cabinet doors would be shut and Nissan would place caution tape across the doors.

11.     Before working inside each cabinet, Rose and his co-workers used a tic tracer to make sure that the busbar was de-energized.  Rose and his co-workers wore the required personal protective equipment ("PPE"), but had to remove their hard hats in order to gain access to the inside of the small 4x4 cabinets.

12.     Rose and his co-workers had been tracing busbars, accessing cabinets, cleaning busbars, and replacing busbars in this fashion for approximately three (3) days prior to the incident.

13.     On April 6, 2022, Rose and his co-workers had gone through approximately eight (8) to ten (10) cabinets and identified a damaged busbar that would have to be removed and replaced. Rose traced the damaged busbar into a switchgear cabinet which Nissan had not "hot marked," indicating that the switchgear cabinet was safe for Rose to enter and continue his work.

14.     The Nissan Plant operates on a three phase system, i.e. A phase, B phase, and C phase.  Inside the switchgear cabinet, there were two (2) rows of three (3) busbars, i.e. a row of A, B, C phase at the top and a row of A, B, C phase at the bottom.  Rose identified the lower right busbar as the damaged busbar which was de-energized.  The damaged busbar was a de-energized

stab that was recessed six (6) to eight (8) inches into the back wall of the cabinet. Each busbar was held in place by two large bolts which were also recessed six (6) to eight (8) inches into the back wall of the cabinet.

15.     Due to its lower location in the cabinet, Rose could not look directly into the cylinder that housed the damaged busbar to remove the bolts. Rose entered the switchgear cabinet and was in the process of lowering his hand to figure out the bolt size when an arc flash occurred. Rose was hit with approximately 7,800 volts, but was not thrown out of the cabinet.

16.     Eventually the breaker tripped, power was disconnected, and a co-worker was able to pull Rose out of the cabinet and into the hallway where the co-worker provided assistance to Rose until medical first responders arrived.

17.     Rose was immediately airlifted by helicopter to UMMC.

## IV. CAUSES OF ACTION

### COUNT ONE - FAILURE TO PROVIDE A SAFE WORKPLACE

18.     Rose incorporates by reference all allegations of this Complaint.

19.     NFPA 70, otherwise known as the National Electric Code ("NEC"), is a standard of the National Fire Protection Association (NFPA) covering electrical safety in the work place. The purpose of the standard is provide practical safeguards for the protection of persons and property from hazards arising from the use of electricity. The standard covers the safety requirements for the installation and removal of electrical conductors and equipment installations used by buildings, warehouses, and/or production plants like the Nissan Canton plant.

20.     Nissan's duties and/or obligations in connection with the work being performed by Rose were governed, in whole and/or in part, by NFPA 70, NFPA70E, the NEC, and/or other

applicable standards of good practice in the industry. Such duties and/or obligations were non-delegable.

21.    NFPA 70E 130.5, and/or other applicable standards of good practice, code sections and/or provisions, requires facility owners such as Nissan to perform an arc flash risk assessment or study prior to allowing a worker such as Rose to perform a task on energized equipment. The purpose of the arc flash risk assessment or study is to identify the presence and location of potential hazards, set boundaries for limited and restricted approaches, make recommendations for flash protection, and otherwise to establish safe working practices.

22.    Nissan failed to conduct an arc flash risk assessment or study of the area within the Nissan plant where Rose was working on the date of the injury.

23.    NEC 110.16(A) provides:

> Electrical equipment, such as switchboards, switchgear, panel boards, industrial control panels, meter socket enclosures, and motor control centers, that is in other than dwelling units, and is likely to require examination, adjustment, servicing, or maintenance while energized, shall be field or factory marked to warn qualified persons of potential electric arc flash hazards. The markings shall meet the requirements in 110.21(B) and shall be located so as to be clearly visible to qualified persons before examination, adjustment, servicing, or maintenance of the equipment.

24.    NEC 110.21(B) requires that such labels and/or markings "shall warn of the hazards using effective words, colors, symbols, or any combination thereof."

25.    Nissan failed to place the required field-applied hazard markings and/or labels on the switchgear cabinet and/or in the area of the plant wherein Rose was injured.

26.    Prior to authorizing work to begin in the Nissan plant, Nissan had a non-delegable duty to provide Rose and/or his co-workers with plans of the Nissan plant electrical system,

generally, and specifically as to the area of the plant where Rose would be working. Nissan's duty was to ensure that Rose and his co-workers would be aware of the manner in which the system was wired, and/or to ensure that Rose and his co-workers were aware of conditions that were not typical or that were un-safe.

27.     Nissan failed to provide Rose and/or his co-workers with plans of the Nissan plant electrical system, generally, and specifically as to the area of the plant wherein Rose would be working.

28.     Pursuant to OSHA standard 29 CFR § 1910.147, and/or other applicable standards of good practice, code sections and/or provisions, Nissan had a non-delegable duty to provide Rose's employer with Nissan's lockout tagout procedures. Further, Nissan had a non-delegable duty to ensure that all Nissan employees complied with Nissan's lockout tagout procedures and energy control program and that all Nissan employees complied with Rose's employer's lockout tagout procedures and energy control program.

29.     Nissan failed to provide Rose's employer with Nissan's lockout tagout procedures. Further, Nissan failed to ensure that all Nissan employees complied with Nissan's energy control program and that all Nissan employees complied with Rose's employer's energy control program.

30.     Additional standards, code sections and/or provisions relating to work place safety which were violated by Nissan will be identified during discovery and made known to Nissan prior to trial.

31.     As a result of the above failures, and additional failures by Nissan that will be identified at trial, Nissan is liable to Rose under the theory of failure to provide a safe work place.

## COUNT TWO - FAILURE TO WARN

32.    Rose incorporates by reference all allegations of this Complaint.

33.    As a result of the above failures, and additional failures by Nissan that will be identified at trial, Nissan is liable to Rose under the theory of failure to warn.

## COUNT THREE - GENERAL NEGLIGENCE

34.    Plaintiff incorporates by reference all allegations of this Complaint.

35.    To the extent that Nissan's duties and obligations described herein were not prescribed by law, then, when Nissan undertook the performance of the above acts and/or other acts to be identified at trial, Nissan had a duty to use reasonable care so as not to cause Rose injury.

36.    As a result of the above failures, and additional failures by Nissan that will be identified at trial, Nissan is liable to Rose under theories of general negligence.

## V. DAMAGES

37.    Plaintiff incorporates by reference all allegations of this Complaint.

38.    As a direct and proximate result of the above failures, actions and/or inactions by Nissan, Rose has sustained severe, permanent and irreversible personal injury and disability. Rose has incurred medical expenses, and will continue to incur medical expenses in the future in order to treat and rehabilitate his condition. Rose suffers from permanent disfigurement and has incurred, and will continue to incur, extreme emotional distress and anxiety. Rose has suffered loss of enjoyment of life and a loss of wage earning capacity. Additional damages will be proven at the trial.

39.    The Nissan plant has been the subject of prior state and/or federal violations for failure to provide persons inside the plant with a safe place to work. These violations include

failures by Nissan to disable electrical machinery and/or systems when necessary to protect the safety of workers inside the plant. For these reasons, and other reasons to be offered at trial, the actions and/or inactions by Nissan described herein rise to the level of intentional misconduct and/or grossly negligent conduct so as to entitle Rose to recover punitive damages against Nissan.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Ryan C. Rose demands judgment against Nissan North America, Inc. in an amount sufficient to compensate him for all damages to which he is entitled by law, including actual damages, punitive damages, attorneys' fees, prejudgment interest, post-judgment interest, and all costs of this action.

DATED this the 23rd day of January, 2023.

PITTMAN, ROBERTS & WELSH, PLLC

BY: _____
C. VICTOR WELSH, III (MSB# 7107)

*Attorney for Ryan C. Rose*

OF COUNSEL:

C. VICTOR WELSH, III (MSB# 7107)
Email: cvw@prwlaw.com
ANN R. CHANDLER (MSB# 101519)
Email: achandler@prwlaw.com
PITTMAN, ROBERTS & WELSH, PLLC
410 South President Street
Jackson, Mississippi 39201
(601) 948-6200 - phone
(601) 948-6187 -facsimile